UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

TONY T.[1],
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:22-cv-703
Litkovitz, M.J.

ORDER

Plaintiff Tony T. brings this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for disability insurance benefits ("DIB"). This matter is before the Court on plaintiff's Statement of Errors (Doc. 7), the Commissioner's response in opposition (Doc. 8), and plaintiff's reply memorandum (Doc. 9).

**I. Procedural Background**

Plaintiff protectively filed his application for DIB on July 14, 2020, alleging disability since April 18, 2018[2], due to a cervical fusion, left shoulder pain, migraines, and a traumatic brain injury. (Tr. 196; *see also* Tr. 165-171). The application was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge ("ALJ") Cristen Meadows. Plaintiff and a vocational expert ("VE") appeared by video and telephone respectively and testified at the ALJ hearing on September 28, 2021. (Tr. 34-54). On October 8, 2021, the ALJ issued a decision denying Plaintiff's DIB application. (Tr. 14-33). This decision became the final decision of the Commissioner when the Appeals Council denied review on September 28, 2022. (Tr. 1-8).

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.
[2] Plaintiff amended his alleged onset date of disability to May 10, 2019. (Tr. 19, 40).

**II. Analysis**

    **A. Legal Framework for Disability Determinations**

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that

2

the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2022.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since May 10, 2019, the alleged onset date (20 CFR 404.1571 *et seq*.).
>
> 3. The [plaintiff] has the following severe impairments: degenerative disc disease, osteoarthritis, migraine headaches, post-concussion syndrome, depressive disorder, anxiety disorder, substance use disorder, post-traumatic stress disorder (PTSD), attention deficit hyperactive disorder (ADHD), and borderline intellectual functioning (20 CFR 404.1520(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the [ALJ] find[s] that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the [plaintiff] can frequently stoop and reach overhead with the left upper extremity; occasionally crawl; never climb ladders, ropes, or scaffolds; should have no exposure to hazards of unprotected heights or dangerous moving machinery; cannot engage in any commercial driving; should avoid concentrated exposure to light brighter than a typical office; and should avoid concentrated exposure to noise at more than the moderate level. He is also limited to low stress jobs which are defined as jobs with only occasional decision making required and only occasional changes in the work setting or duties. Work should be performed in a setting that does not require strict production quotas or a sustained fast pace and require no more than occasional interaction with the general public, coworkers, or supervisors. Finally, the [plaintiff] should not engage in any joint tasks and should not receive any over the shoulder supervision.

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565).[3]

7. The [plaintiff] was born [in] . . . 1979 and was 39 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The [plaintiff] has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled" whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569 and 404.1569a).[4]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from May 10, 2019, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 19-28).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. __, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305

---

[3] Plaintiff's past relevant work was as an auto body repair tech, a skilled, medium position; delivery driver, a semi-skilled, medium position; machinist, a skilled, medium position; and tow truck driver, a semi-skilled, medium position. (Tr. 27, 51).
[4] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative light, unskilled occupations such as merchandise marker (129,000 jobs nationally) and sorter (90,000 jobs nationally). (Tr. 28, 52).

4

U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746).

**D. Specific Errors**

In his Statement of Errors, plaintiff alleges the ALJ erred by (1) finding plaintiff could perform a limited range of low stress light work, (2) failing to evaluate plaintiff's impairments under Listing 12.02 at step three of the sequential evaluation process, and (3) disregarding plaintiff's subjective symptoms. (Doc. 7). The Commissioner generally argues that the ALJ's decision is supported by substantial evidence. (Doc. 8).

**1. Plaintiff's first assignment of error is waived.**

Plaintiff alleges as his first assignment of error that the ALJ erred by finding plaintiff "can perform a limited range of low stress light work." (Doc. 7 at PAGEID 830). Plaintiff did not, however, further develop this argument in the "Arguments" section of his Statement of Errors. Nowhere in plaintiff's Statement of Errors does plaintiff explain how the ALJ erred in this regard. "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). *See also Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 454 (6th Cir. 2006) (a

5

plaintiff's failure to develop an argument challenging an ALJ's non-disability determination amounts to a waiver of that argument). Plaintiff failed to develop this argument legally or factually, provide any analysis, or cite any specific treatment notes in the medical evidence of record showing why plaintiff believes the ALJ committed error. Therefore, any such argument is waived. *See Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 624 (6th Cir. 2013) (internal citations omitted) (emphasis added) (The Sixth Circuit "has consistently held that arguments not raised in a party's opening brief, *as well as arguments adverted to in only a perfunctory manner*, are waived").

### 2. The ALJ's step three finding is supported by substantial evidence (second assignment of error).

In his second assignment of error, plaintiff alleges the ALJ erred at step three of the sequential evaluation process by failing to evaluate plaintiff's impairments under Listing 12.02, Neurocognitive Disorders. (Doc. 7).[5] Elsewhere in his Statement of Errors, plaintiff argues that his "condition is more properly assessed under this Listing and when doing so his condition meets or is medically equal to: meeting A & C (1) and (2)." (*Id*. at PAGEID 837). Plaintiff acknowledges the ALJ's finding that the "'B criteria' are not met in Listing 12.02, however, the record as a whole does satisfy Paragraph C. . . ." (*Id*. at PAGEID 841). In sum, plaintiff argues the ALJ's step three finding is not supported by substantial evidence because "no consideration was given to [Listing] 12.02. . . ." (Doc. 9 at PAGEID 871).[6]

---

[5] Plaintiff's statement of errors alleges, "The ALJ improperly substituted her opinion for the effects of the medical impairments and symptoms for those of [plaintiff's] treating physicians, DDS consultants and consultative examiner in determining whether [plaintiff's] condition met or equaled a listing." (Doc. 7 at PAGEID 844). Notably, plaintiff fails to identify the relevant medical opinions of record that the ALJ allegedly substituted her opinion for or failed to properly evaluate in assessing whether plaintiff met or equaled a listing. This argument is not further developed and is without merit.

[6] Within this assignment of error, plaintiff also mentions the "ALJ mistakenly considered a number of listings which do not apply to [plaintiff's] condition including 11.02[,] a listing for dyscognitive seizures, although [plaintiff] had never complained of having experienced seizures." (Doc. 9 at PAGEID 870; *see also* Doc. 7 at PAGEID 835). The Court notes that Social Security Ruling ("SSR") 19-4p indicates that primary headache disorder is not a listed

The Commissioner argues the ALJ properly evaluated plaintiff's impairments under the medical listings, and the ALJ's step three finding is supported by substantial evidence. (Doc. 8). The Commissioner contends the "'paragraph C' criteria for listing 12.02 are identical to the C criteria for listings 12.04, 12.06, and 12.05" and the "ALJ properly determined Plaintiff did not satisfy these criteria, particularly regarding 'marginal adjustment.'" (*Id*. at PAGEID 858-59) (internal citations omitted). The Commissioner argues that "even though the ALJ did not explicitly discuss listing 12.02 in the decision, she did determine Plaintiff did not satisfy the required criteria." (*Id*. at PAGEID 859).

At step three of the sequential evaluation process, plaintiff carries the burden to show that he has an impairment or combination of impairments that meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, App. 1. *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001); 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant meets all of the criteria of a listed impairment, he is disabled; otherwise, the evaluation proceeds to step four. 20 C.F.R. §§ 404.1520(d)-(e); *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *see also Rabbers*, 582 F.3d at 653 (citing 20 C.F.R. § 404.1525(c)(3)) ("A claimant must satisfy all of the criteria to meet the listing.").

In evaluating whether a claimant meets or equals a listed impairment, an ALJ must "actually evaluate the evidence, compare it to [the relevant listed impairment], and give an explained conclusion, in order to facilitate meaningful judicial review." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011). Otherwise, "it is impossible to say that the

---

impairment but directs consideration of Listing 11.02: "Epilepsy (listing 11.02) is the most closely analogous listed impairment for an MDI of a primary headache disorder. While uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures), and we may find that his or her MDI(s) medically equals the listing." SSR 19-4p, 2019 WL 4169635, at *7. The ALJ recognized that plaintiff's primary headache disorder should be analyzed for equivalency under Listing 11.02 pursuant to SSR 19-4p. The ALJ's consideration of Listing 11.02 is therefore not reversible error.

7

ALJ's decision at Step Three was supported by substantial evidence." *Id*. (citations omitted). The ALJ "need not discuss listings that the [claimant] clearly does not meet, especially when the claimant does not raise the listing before the ALJ." *Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 641 (6th Cir. 2013).[7] "If, however, the record 'raise[s] a substantial question as to whether [the claimant] could qualify as disabled' under a listing, the ALJ should discuss that listing." *Id*. (quoting *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990)); *see also Reynolds*, 424 F. App'x at 415-16 (holding that the ALJ erred by not conducting any step-three evaluation of the claimant's physical impairments where the ALJ found that the claimant had the severe impairment of back pain, and the claimant had put forth evidence that could meet the applicable Listing).

Where, as here, an ALJ does not discuss a Listing, the Court "must determine whether the record evidence raises a substantial question as to [a claimant's] ability to satisfy each requirement of the listing." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 433 (6th Cir. 2014). To raise a substantial question, "[a] claimant must do more than point to evidence on which the ALJ could have based" her Listing finding. *Id*. at 432 (quoting *Sheeks*, 544 F. App'x at 641-42). "Rather, the claimant must point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing." *Id*. (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). "Absent such evidence, the ALJ does not commit reversible error by failing to evaluate a listing at Step Three." *Id*. at 433; *see also Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014) (finding harmless error in the ALJ's unexplained step-

---

[7] While not dispositive of this assignment of error, the Court notes that counsel for plaintiff failed to specifically identify Listing 12.02 when asked by the ALJ at the September 28, 2021 hearing whether he was "arguing [whether] any listing is met or equaled?" (Tr. 40). *See Sheeks*, 544 F. App'x at 641. *See also Wilson v. Comm'r of Soc. Sec.*, 618 F. App'x 281, 286 (6th Cir. 2015) (an ALJ is "not obligated to discuss" specific listings where a claimant's counsel "did not mention those particular listings at [a claimant's] hearing before the ALJ, and [a claimant] offers no evidence that those listings applied to her") (citing *Malone v. Comm'r of Soc. Sec.*, 507 F. App'x 470, 472 (6th Cir. 2012) and *Walker v. Barnhart*, 72 F. App'x 355, 357 (6th Cir. 2003)).

8

three findings where the claimant did not show that he could reasonably meet or equal a Listing's criteria).

Here, the ALJ analyzed plaintiff's severe impairments at step three of the sequential evaluation process under Listings 1.15, 1.18, 11.02, 12.04, 12.05, 12.06, and 12.15 and determined that plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 19-23). The ALJ did not analyze Listing 12.02, which plaintiff claims is error.

To satisfy Listing 12.02, a claimant must meet subparts "A and B, or A and C. . . ." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.02. To meet Listing 12.02, a claimant must present:

> A. Medical documentation of a significant cognitive decline from a prior level of functioning in one or more of the cognitive areas:
>
>> 1. Complex attention;
>> 2. Executive function;
>> 3. Learning and memory;
>> 4. Language;
>> 5. Perceptual-motor; or
>> 6. Social cognition;
>
> AND
>
> B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
>
>> 1. Understand, remember, or apply information (see 12.00E1).
>> 2. Interact with others (see 12.00E2).
>> 3. Concentrate, persist, or maintain pace (see 12.00E3).
>> 4. Adapt or manage oneself (see 12.00E4).
>
> OR
>
> C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:

> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and
>
> 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.02(A), (B), (C).

Plaintiff does not dispute the ALJ's finding that the "B criteria" applicable to Listing 12.02 are not met. Nevertheless, plaintiff argues the medical record satisfies both the Listing 12.02A and C criteria, and the ALJ should have considered this listing.

Assuming, arguendo, that plaintiff's mental impairments satisfy the Listing 12.02A criteria, plaintiff fails to point to any record evidence that raises a substantial question as to whether he satisfies the specific criteria of Listing 12.02C. *See Holbert v. Comm'r of Soc. Sec.*, No. 2:19-cv-5553, 2021 WL 282554, at *11 (S.D. Ohio Jan. 28, 2021) (finding that the ALJ's step three finding was supported by substantial evidence where the plaintiff failed "to cite to any medical evidence that meets the specific criteria of the listing") (Report and Recommendation), *adopted*, 2021 WL 958438 (S.D. Ohio Mar. 15, 2021). Listing 12.02C requires evidence of a "serious and persistent" mental disorder and both: "(1) Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and (2): Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c)." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.02(C). The introductory paragraphs to the 12.00 Mental Disorders Listings for Adults explain:

> The criterion in C2 is satisfied when the evidence shows that, despite your diminished symptoms and signs, you have achieved only marginal adjustment. "Marginal adjustment" means that your adaptation to the requirements of daily life is fragile; that is, you have minimal capacity to adapt to changes in your

10

> environment or to demands that are not already part of your daily life. We will consider that you have achieved only marginal adjustment when the evidence shows that changes or increased demands have led to exacerbation of your symptoms and signs and to deterioration in your functioning; for example, you have become unable to function outside of your home or a more restrictive setting, without substantial psychosocial supports (see 12.00D). Such deterioration may have necessitated a significant change in medication or other treatment. Similarly, because of the nature of your mental disorder, evidence may document episodes of deterioration that have required you to be hospitalized or absent from work, making it difficult for you to sustain work activity over time.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00G2c.

Plaintiff does not point any evidence showing that despite his reliance on medical treatment on an ongoing basis to diminish the symptoms and signs of his mental disorders, he has achieved only "marginal adjustment" for purposes of Listing 12.02C. Moreover, the ALJ specifically addressed the marginal adjustment requirement of the "C criteria" in conjunction with his discussion of Listing 12.04, 12.06, and 12.15:

> I have also considered whether the "paragraph C" criteria of 12.04, 12.06, and 12.15 are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. There is no evidence the claimant has had repeated episodes of decompensation, would decompensate if even minimal increases in mental demands or changes in the environment occurred, or has a history of being unable to function outside a highly supportive living arrangement.

(Tr. 21).

Plaintiff has not challenged the ALJ's paragraph C finding, nor has he pointed to specific evidence that demonstrates he reasonably could meet or equal every requirement of Listing 12.02. *See Smith-Johnson*, 579 F. App'x at 433. *See also Suesz v. Comm'r of Soc. Sec.*, No. 1:13-cv-283, 2014 WL 4162555, at *5 (S.D. Ohio Aug. 20, 2014) ("While the ALJ did not expressly analyze whether Plaintiff met Listing 12.02, he did provide a thorough analysis of the severity requirements of Listing 12.04. In so doing, the ALJ determined that Plaintiff's impairment did not satisfy the criteria in paragraph B or paragraph C."). In the absence of such

evidence, the Court can find no reversible error based on the ALJ's failure to evaluate Listing 12.02. The ALJ's step three finding is supported by substantial evidence, and plaintiff's second assignment of error is overruled.

### 3. The ALJ's evaluation of plaintiff's symptom severity is supported by substantial evidence (third assignment of error).

In plaintiff's third assignment of error, plaintiff alleges the ALJ erred in assessing plaintiff's "credibility" by failing "to provide specific rationale for rejecting the effects of [plaintiff's] symptoms as self-reported and noted in medical records." (Doc. 7 at PAGEID 830). In the "Arguments" section of his Statement of Errors, plaintiff argues the ALJ "failed to properly apply the pain standard" and "further erred in her pain analysis by failing to consider all of the factors enumerated in SSR 96-7P and 20 CFR § 416.929(C)(3)(i)-(vii). . . ." (*Id*. at PAGEID 846).[8] The Commissioner argues that the ALJ's evaluation of plaintiff's subjective complaints is supported by substantial evidence. (Doc. 8 at PAGEID 859-66).

Aside from citing caselaw in support of his legal argument (Doc. 7 at PAGEID 846-50), plaintiff fails to cite any substantive or procedural deficiency regarding the ALJ's symptom evaluation. Plaintiff does not direct the Court to any specific portion of the ALJ's decision or any specific factor that the ALJ allegedly failed to consider. For this reason, plaintiff's assignment of error concerning the ALJ's evaluation of plaintiff's subjective complaints is without merit and waived. *McPherson*, 125 F.3d at 995-96; *Rice*, 169 F. App'x at 454; *Kuhn*, 709 F.3d at 624. *See also Taylor v. Comm'r of Soc. Sec. Admin.*, No. 5:22-cv-01635, 2023 WL 4534536, at **11-12 (N.D. Ohio June 27, 2023) (the plaintiff's assignment of error concerning

---

[8] Plaintiff's reference to 20 C.F.R. § 416.929(C)(3)(i)-(vii) is improper because § 416.929 is a regulation governing supplemental security income ("SSI"), not DIB. Plaintiff filed an application for DIB, and not SSI. (Tr. 165-171; *see also* Tr. 17). The proper regulation governing DIB claims is 20 C.F.R. § 404.1529(c)(3)(i)-(vii). Likewise, plaintiff's citation to SSR 96-7p is misplaced because that Ruling was superseded by SSR 16-3p effective March 28, 2016. *See* 1996 WL 374186.

the ALJ's symptom evaluation was waived when the plaintiff failed to provide a basis for his allegations and failed to demonstrate any flaw in the ALJ's reasoning or analysis) (Report and Recommendation), *adopted*, 2023 WL 4531179 (N.D. Ohio July 13, 2023); *Zeigler v. Comm'r of Soc. Sec.*, No. 5:23-cv-00068, 2023 WL 8769790, at *5 (N.D. Ohio Nov. 1, 2023) (the plaintiff's assignment of error concerning the ALJ's evaluation of his subjective symptoms was waived because the plaintiff failed to explain which evidence the ALJ ignored and how that evidence would have changed the outcome had it been considered) (citing *McPherson*, 125 F.3d at 995-96); *Petro v. Saul*, No. 1:19-cv-00027, 2019 WL 7583659, at *6 (N.D. Ohio Dec. 20, 2019) (Report and Recommendation), *adopted sub nom. Petro v. Comm'r of Soc. Sec.*, 2020 WL 224596 (N.D. Ohio Jan. 15, 2020) (same).

Nevertheless, even if plaintiff's assignment of error were not waived, it still fails on the merits. ALJs are to "consider all of the evidence in an individual's record" and determine whether the individual is disabled by examining "all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the individual's record." Social Security Ruling 16-3p, 2016 WL 1119029, at *2. ALJs also evaluate what the agency formerly termed the "credibility" of a plaintiff's statements about his or her symptoms. *See, e.g., Rogers*, 486 F.3d at 246-49. In March 2016, the agency eliminated its use of the term "credibility" and clarified "that subjective symptom evaluation is not an examination of an individual's character. . . ." SSR 16-3p, 2016 WL 1119029, at *1. To avoid such mistaken emphasis, this analysis is now characterized as the "consistency" of a claimant's subjective description of symptoms with the record. *See Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 171 n.3 (6th Cir. 2020) (citing *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016)).

13

A two-step inquiry applies to symptom evaluation. The ALJ first determines if the record contains objective medical evidence of an underlying medically determinable impairment that could reasonably be expected to produce the individual's symptoms. SSR 16-3p, 2016 WL 1119029, at *3. *See also* 20 C.F.R. § 404.1529(a); *Jones*, 336 F.3d at 475-76. Step two of symptom evaluation shifts to the severity of a claimant's symptoms. The ALJ must consider the intensity and persistence of the symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities. *See* 20 C.F.R. §§ 404.1529(a) and (c); SSR 16-3p, 2016 WL 1119029, at *4. In making this determination, the ALJ will consider the following:

(i) Your daily activities;

(ii) The location, duration, frequency, and intensity of your pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

An ALJ may not consider only objective medical evidence in determining disability unless this evidence alone supports a finding of disability. SSR 16-3p, 2016 WL 1119029, at *5 ("If we cannot make a disability determination or decision that is fully favorable based solely on objective medical evidence, then we carefully consider other evidence in the record in reaching a

14

conclusion about the intensity, persistence, and limiting effects of an individual's symptoms."); 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."). Moreover,

> [i]t is . . . not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.

SSR 16-3p, 2016 WL 1119029, at *9. *See also id*. at *7 (noting that the ALJ "will discuss the factors pertinent to the evidence of record"). At the same time, the ALJ is not required to cite or discuss every factor used to evaluate the consistency of a plaintiff's description of symptoms with the record evidence. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009) ("[T]he ALJ expressly stated that she had considered [the predecessor to SSR 16-3p], which details the factors to address in assessing credibility. There is no indication that the ALJ failed to do so. This claim therefore lacks merit. . . .").

Here, the ALJ determined that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 24). Thereafter, the ALJ thoroughly reviewed the medical evidence of record, including the medical opinions of plaintiff's treatment providers (Tr. 24-27), and reasonably determined that "the medical record confirms the presence of the alleged conditions,

15

though it does not support a finding that the claimant is as limited as alleged." (Tr. 27). The ALJ explained:

> The claimant's spinal and shoulder injuries improved following surgery and appear to be successfully managed. Similarly, his migraine headaches have improved with treatment, though chronic management is necessary. While the claimant suffers significant intellectual deficits, he retains the ability to perform simple tasks. His ability to interact with others, manage stress, and maintain an adequate pace are no more than moderately limited due to his conditions.

(*Id.*).

Plaintiff fails to explain how the ALJ erred in evaluating the consistency of his subjective description of symptoms with the medical record. The ALJ provided a detailed examination of the medical evidence and properly considered the factors enumerated in 20 C.F.R. § 404.1529(c)(3) in evaluating the consistency of plaintiff's subjective description of symptoms with the record evidence. The ALJ considered plaintiff's daily activities, such as cooking, completing basic chores, and dressing himself without any difficulty and contrasted these findings with plaintiff's testimony and the medical evidence of record. (Tr. 20). Further, the ALJ properly evaluated the precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication that plaintiff's takes to alleviate his pain or other symptoms; treatment that plaintiff received for relief of his pain or other symptoms; and the location, duration, frequency, and intensity of plaintiff's pain and other symptoms. (*See* Tr. 23-27).

For example, the ALJ noted that prior to the alleged onset date plaintiff was the victim of an assault in April 2018. He sustained a serious head injury, requiring eight staples to close the wound, and a shoulder injury. (Tr. 24, citing Tr. 285, 468). Plaintiff was subsequently diagnosed with PTSD and post-concussion syndrome and referred for direct neurological examination and imaging on his shoulder. (*Id.*, citing Tr. 336). The ALJ thereafter discussed

plaintiff's May 18, 2018 neurological examination and subsequent imaging results. (*Id.*, citing Tr. 612-13, 692, 695).

The ALJ referenced additional treatment records prior to plaintiff's alleged onset date (*Id.*, citing Tr. 305, 307, 309) and noted that plaintiff did not return for additional care until May 2019, when he continued to display decreased range of motion, tenderness, and pain. (*Id.*, citing Tr. 379). The ALJ noted plaintiff received an additional injection, was prescribed muscle relaxers, and was referred for imaging, which revealed mild arthritic changes at the AC joint with evidence of bone marrow edema. (Tr. 24-25, citing Tr. 380, 689). The ALJ discussed a May 23, 2019 treatment record where plaintiff sought treatment for worsening headaches, photophobia, nausea, dizziness, blurred vision, and memory loss. (Tr. 25, citing Tr. 580). The ALJ noted plaintiff's medication was restarted, and plaintiff was administered an occipital nerve block the following week. (*Id.*, citing Tr. 578, 583). The ALJ further noted that plaintiff underwent an updated MRI of his cervical spine on June 5, 2019, which revealed multilevel degenerative changes of the cervical spine with foraminal narrowing most prominent on the right at C4-5 and bilaterally at C5-6. (*Id.*, citing Tr. 686). The ALJ cited a July 11, 2019 record where plaintiff received an epidural steroid injection to manage his symptoms. (*Id.*, citing Tr. 571).

The ALJ also evaluated treatment records from the summer of 2019 where plaintiff sought treatment from an orthopedist. (*Id.*, citing Tr. 562, 572). As the ALJ discussed, plaintiff's clinician opined that plaintiff's complaints of pain were out of proportion with imaging, and plaintiff's reports of shoulder pain may be related to his cervical condition. (*Id.*, citing Tr. 562-63). The ALJ further noted that plaintiff received a discectomy and fusion at C5-6 on August 26, 2019 based on an updated MRI performed on August 1, 2019, which revealed a diffuse disc bulge causing bilateral foraminal stenosis at C5-6. (*Id.*, citing Tr. 300, 553-55). The

ALJ cited treatment records following this procedure where plaintiff continued to report pain in his left upper extremity, despite plaintiff's display of good strength, sensation, and adequate grip strength in his left hand during the examination. (*Id*., citing Tr. 297-99). Thereafter, the ALJ noted that plaintiff underwent arthroscopic labral repair, debridement, and subacromial decompression on October 22, 2019, and plaintiff reported doing well postoperatively with reports of pain being related to the procedure and not lingering symptoms from the injury. (*Id*., citing Tr. 516, 529).

The ALJ noted that during this period, plaintiff's cervical condition showed some worsening and imagining suggested mild to moderate right neuroforaminal stenosis at C3-4 and C4-5 but only mild left neuroforaminal stenosis at C4-5 and C6-7. (*Id*., citing Tr. 658-59). The ALJ cited a May 18, 2020 treatment record indicating that plaintiff's symptoms were managed through prescription medication. (*Id*., citing Tr. 414). The ALJ further discussed recent treatment related to plaintiff's ongoing headaches where plaintiff reported that Botox had improved his symptoms. (*Id*., citing Tr. 500). The ALJ also cited neurological examinations with specific notations describing intact memory and fund of knowledge. (*Id*., citing Tr. 503). The ALJ noted that plaintiff continues to receive Botox injections on a quarterly basis. (*Id*., citing Tr. 778, 799).

The ALJ also discussed records relating to plaintiff's mental health symptoms and noted that plaintiff received medication for treatment of PTSD, anxiety, depression, and ADHD. (Tr. 26, citing Tr. 287). The ALJ noted that despite treatment notes documenting behaviors such as restlessness, depressed mood, angry affect, decreased cognition, weak abstract reasoning, and diminished capacity for concentration, there was no evidence of direct mental health treatment from a specialist, and plaintiff's conditions were managed by his primary care physician. (*Id*.,

18

citing Tr. 263, 269, 275, 281, 286). Moreover, the ALJ properly evaluated the opinions from the Disability Determination Services consultants relating to plaintiff's physical and mental limitations and the opinions from plaintiff's February 26, 2021 consultative examination with Dr. Sexton. (Tr. 26-27).

Overall, plaintiff's argument that the ALJ failed to comply with SSR 16-3p is without merit. The ALJ followed the two-step analysis required by SSR 16-3p and reasonably determined that plaintiff's statements regarding the intensity, persistence, and functionally limiting effects of his impairments were not entirely consistent with the medical and other evidence of record. (Tr. 24). The ALJ supported this finding with specific facts in the medical record. (Tr. 24-27). Plaintiff does not explain how the ALJ failed to comply with SSR 16-3p and, instead, he makes the general statement that the "ALJ's credibility finding is not based on substantial evidence. . . ." (Doc. 7 at PAGEID 849). The ALJ reasonably explained her analysis of the SSR 16-3p factors and substantial evidence supports this determination. Plaintiff's third assignment of error is therefore without merit and overruled.

### III. Conclusion

Based on the foregoing, plaintiff's Statement of Errors (Doc. 7) is **OVERRULED**, and the Commissioner's non-disability finding is **AFFIRMED**. **IT IS THEREFORE ORDERED** that judgment be entered in favor of the Commissioner and this case is closed on the docket of the Court.

Date: 2/17/2024

Karen L. Litkovitz
Chief United States Magistrate Judge